T.C. Summary Opinion 2007-135

UNITED STATES TAX COURT

GARY S. AND JULIE A. BROWN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7001-04S.            Filed August 2, 2007.

<u>Gary S. Brown</u> and Julie A. Brown, pro sese.

<u>Alan H. Cooper</u>, for respondent.

CARLUZZO, <u>Special Trial Judge</u>:  This case for the
redetermination of a deficiency was heard pursuant to the
provisions of section 7463.[1]  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and

_____

    [1] Section references are to the Internal Revenue Code of
1986, as amended, in effect for the relevant period, and Rule
references are to the Tax Court Rules of Practice and Procedure.

this opinion shall not be treated as precedent for any other case.

Respondent determined a $6,271 deficiency, a $1,698.15 section 6651(a)(1) addition to tax, and a $1,254.20 section 6662(a) accuracy-related penalty with respect to petitioners' 1997 Federal income tax.

The issues for decision are: (1) Whether petitioners are entitled to a trade or business expense deduction for rent in excess of the amount allowed by respondent; (2) whether petitioners failed to file a timely 1997 Federal income tax return, and if so, whether their failure was due to reasonable cause; and (3) whether the underpayment of tax required to be shown on petitioners' 1997 Federal income tax return is due to negligence or intentional disregard of rules or regulations.

## Background

Some of the facts have been stipulated and are so found. At all times relevant petitioners were married to each other.[2] They filed a joint Federal income tax return for 1997. References to petitioner are to Gary S. Brown.

Petitioner is an attorney. During all times relevant, he conducted the practice of law as sole proprietorship in the Los Angeles, California, area. From May 1992 through November 1995,

---

[2] Petitioners separated and divorced from each other following the year in issue.

his law offices were located in leased space pursuant to a sublease (the lease)[3] petitioner entered into with a Georgia partnership (the lessor).  As relevant here, the lease obligated petitioner to make rental payments of $3,700 per month from January through October 2003, and $6,900 per month thereafter. Petitioner paid only portions of the rent due under the lease during 1993 and 1994, and he made none of the rent payments due under the lease during 1995, as shown on the following table (amounts are rounded and include incidental charges):

| Year | Rent (Annual) Due Per Lease | Rent Paid |
|------|------------------------------|-----------|
| 1993 | $55,395 | $43,900 |
| 1994 | 84,738 | 57,248 |
| 1995 | 84,915 | - 0 - |

In connection with his law practice, petitioner also rented a storage facility where he stored client records.  He paid $500 per month for the storage facility throughout the years 1993 through 1995.

Towards the end of 1995, petitioner's rental arrearages under the lease were substantial.  As it turned out, he was sued by the lessor in October 1995, and according to petitioner "the amount in controversy" in that lawsuit "exceed[ed] $100,000". Ultimately the law suit was settled by agreement between petitioner and the lessor.  In accordance with that settlement

---

[3] The term of the sublease ran from May 15, 1992 until Sept. 30, 1996.

agreement, payments totaling $137,150 were made by petitioner to the lessor during 1997. Petitioner vacated the premises covered by the lease as of November 30, 1995. As best can be determined from the record, petitioner relocated his law offices and continued his law practice sometime towards the end of 1995 or beginning of 1996.

Petitioners filed joint Federal income tax returns for the years 1993, 1994, and 1995. Each of the those returns includes a Schedule C, Profit or Loss From Business, on which items of income and expense deductions relating to petitioner's practice of law are claimed. Each Schedule C shows a deduction for "rent" "other business property" as follows:

| Year | Amount |
|------|--------|
| 1993 | $48,493 |
| 1994 | 65,852 |
| 1995 | 85,092 |

Petitioners also filed a joint Federal income tax return for 1997, and that return also includes a Schedule C relating to petitioner's law practice. As relevant here, on that Schedule C petitioner claims a $23,822 deduction for "rent" "other business property". During the course of the examination of petitioners' 1997 return, an amended Schedule C was submitted to the revenue agent conducting the examination. The amended Schedule C shows a $160,972 deduction for "rent" "other business property", consisting of the amount originally claimed, plus the $137,150

payment made by petitioner to settle the lawsuit involving the lease.

Petitioners' 1997 return was prepared by Julie Brown, who also had some responsibility for bookkeeping and check writing in connection with petitioner's law practice, but who has no specialized training in accounting or bookkeeping. At trial, she testified to the many errors and irregularities in connection with the records of petitioner's law practice, as well as items shown on their 1997 return. Taking into account an extension to file, that return was due to be filed on or before August 15, 1998,[4] but it was not filed until October 16, 1998.

In the notice of deficiency that forms the basis for this case, respondent allowed $62,501 of the rent deduction claimed on the amended Schedule C. According to respondent, the portion of the rent deduction not allowed ($98,471) is the amount that duplicates rent with respect to the lease already deducted and allowed on petitioners' 1993, 1994, and 1995 Federal income tax returns. Other adjustments made in the notice of deficiency have been agreed to by the parties and need not be discussed.

---

[4] The parties stipulated that the Apr. 15, 1998, normal filing due date was extended at least until Aug. 15, 1998. No explanation has been provided regarding the computation in the notice of deficiency showing the due date as Apr. 15, 1998.

## Discussion

The nature of the issue in this case calls into question the method of accounting used by petitioner in his law practice during the year in issue, as well as the years 1993, 1994, and 1995. The stipulation of facts filed in this case is silent with respect to the method of accounting used by petitioner in computing the income and deductions shown on the Schedules C for his law practice for those years. Given the nature of the disputed issue in this case, the failure to stipulate what would seem to be a fundamental point leads us to conclude that there is no agreement between the parties with respect to it. In the absence of an agreement between the parties regarding petitioner's accounting method, and in the absence of any persuasive evidence as to petitioner's accounting method,[5] we proceed without making any specific finding regarding the method of account used by petitioner in computing the income and deductions of his law practice, or whether that method changed from year to year.

According to petitioners, petitioner is entitled to a deduction for the $137,150 paid to the lessor in 1997 in settlement of the lawsuit regarding the lease. Respondent agrees

---

[5] According to the Schedules C, petitioner used the "cash" method of accounting, but the many errors and irregularities on the Schedule C included with petitioners' 1997 return invite us to ignore much of the information reported on the Schedules C.

that the payment might have otherwise given rise to a deduction for 1997 under section 162, but claims that $98,471 of that payment duplicates expenses already deducted by petitioner in prior years. As respondent views the matter, petitioners are not entitled twice to deduct the same expense. Petitioners agree with that principle, but argue that the rent deductions claimed in 1993, 1994, and 1995 do not relate entirely to the lease. According to petitioners, the rent expense deductions claimed in 1993, 1994, and 1995 include, in part, rent expenses connected to the lease, and, in part, rent expenses not connected to the lease.

For example, petitioners claim that they paid $500 per month in storage fees for client records not stored on the premises covered by the lease. They also suggest that a portion of the rental expense deduction shown in 1993, 1994, and 1995 might have included some office in the home expenses.

We reject petitioners' claim on this latter point. There is insufficient evidence in the record to support any finding regarding the use of petitioners' residence for business purposes during any of the relevant periods. We accept their claim, however, that a portion of the rent deduction claimed in the years 1993, 1994, and 1995 related to rent expenses not connected with the lease.

Our finding in this regard has the following consequences. There is no duplication with respect to the rent expense deduction claimed on the Schedules C for the years 1993 and 1994. So much of respondent's reduction of the $137,150 settlement payment as is attributable to a duplication for those years is rejected. With respect to 1995, we find that all but $6,000 of the $85,092 rent deduction claimed for that year has been duplicated in the rent deduction claimed for 1997. Therefore $79,000 of the $137,150 settlement payment is not allowable in 1997.

Respondent imposed an addition to tax under section 6651(a)(1). Briefly stated, that section provides for an addition to tax if a return is not filed on or before the date that the return is due, unless the delay in filing is due to reasonable cause and not willful neglect.

Petitioners' 1997 return was received and filed by respondent on October 16, 1998. According to respondent's records, that return was due to be filed on or before August 15, 1998. Petitioners do not dispute the date that respondent claims to have received their 1997 return; furthermore, they make no claim that imposition of the addition to tax is inappropriate because they had reasonable cause for their failure to file a timely return. Instead, they claim that their 1997 return was not filed late. According to petitioners, they had been granted

an additional extension until October 15, 1998, to file that return, and they did so in a timely fashion.  See sec. 7502. Respondent has no record of the additional extension, and petitioners' evidence on the point is less than compelling. Respondent's imposition of the section 6651(a)(1) addition to tax is sustained, but in an amount that takes into account the August 15, 1998, extended due date of petitioners' 1997 return.

Respondent also imposed a section 6662(a) penalty on the underpayment of tax required to be shown on petitioners' 1997 return.  In addition to other reasons, if any portion of an underpayment of tax required to be shown on a taxpayer's return is due to negligence, then the section 6662(a) penalty is applicable.  The many errors and irregularities admitted to by petitioners with respect to their 1997 return make it clear that the imposition of the section 6662(a) penalty is appropriate with respect to the entire underpayment of tax, which in this case is computed in the same manner as the deficiency.  See sec. 6664(a).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.